FREDERICK JOHNSON and ABRAM J. LIGHT, Composing the Firm of
JOHNSON & LIGHT, Respondents, *v.* THE CITY OF MOUNT VERNON,
Appellant.

*Contract to fill in a street and maintain it at grade for a year — duty of the con-
tractor as to continuing the work — direction of the street commissioner to stop.*

A contractor agreed to bring a street to a specified grade and to maintain it at
such grade for a period of twelve months after the completion of the work,
receiving pay therefor at the rate of thirty cents per "cubic yard of filling for
embankment," the proposals for bids for the work stating that the engineer's
estimate of the work to be done was a specified number of cubic yards for
filling, which is to be "approximate only. * * * The contractor shall have
no claim against the city by reason of any variation between the quantities of
the approximate estimate and the actual quantities as measured when the work
is completed."

*Held,* that the contractor could not maintain an action against the city for the work done in bringing the street to grade, where, by reason of the swampy nature of the land, it had settled and been filled up on three or more different occasions, and had again sunk below the grade level within the year.

In such a case it is the duty of the contractor to continue the work until it has been accepted by the commissioner of public works of the municipality, or until such commissioner has improperly refused to give his certificate; and even where the contractor is justified in suspending the work by the direction of the commissioner, his right to take advantage of such direction is waived by his afterwards continuing the work.

APPEAL by the defendant, The City of Mount Vernon, from a judgment of the Supreme Court in favor of the plaintiffs, entered in the office of the clerk of the county of Westchester on the 23d day of March, 1898, upon the report of a referee.

*William J. Marshall,* for the appellant.

*David Swits* [*George C. Appell* with him on the brief], for the respondents.

GOODRICH, P. J.:

On December 9, 1896, the plaintiffs, who were general contractors, entered into two separate contracts with the city of Mt. Vernon, the defendant, to grade and otherwise improve parts of North Third avenue and Oakley avenue, two streets of the defendant. The contracts are identical in their provisions, except as to the localities. The city had previously issued "proposals" for "regulating, grading and otherwise improving" the streets. The proposals required material to be furnished by the contractor, according to plans and specifications. The work was to be paid for at the rate of thirty cents per cubic yard "of filling for embankment." The proposals stated that the engineer's estimate of the work to be done was 11,350 cubic yards for filling, which was stated to be "approximate only, and bidders are required to form their own judgment of the quantities and character of the work by personal examination of the ground, and of the specifications and drawings relating to the work. The contractor shall have no claim against the city by reason of any variation between the quantities of the approximate estimate and the actual quantities as measured when the work is completed, nor on account of any misunderstanding or misconception of the nature and character of the work or of the ground where it is to be executed."

The plaintiffs made a bid for the work named, using the words, " for filling placed in embankment, per cubic yard, the sum of thirty cents."

The plaintiffs thereafter entered into written contracts with the defendant, some of the provisions of which contracts we proceed to state. The plaintiffs agreed to " furnish and provide all the work and materials required in, toward or about the regulating, grading, and otherwise improving (the street in question), according to the several plans or drawings, and specifications prepared and placed in possession of the city clerk    *    *    *    which said plans or drawings and specifications form and are to be considered as part of this contract." Among the specifications in the contract, the clause on grading reads as follows : " The avenue shall be graded to its entire width, by embankment, so that the carriageway, gutters and sidewalks may be shaped to conform to the drawings. The center of the street shall be made to conform to the established grade line, which is shown on the profile, and which will be indicated on the ground by the engineer by suitable grade stakes to be given by him from time to time as required."

Clause VI of the contract reads as follows : " That all work of any kind which, during its progress, or before the final acceptance of the whole work, shall become damaged from any cause whatsoever, shall be replaced and repaired to the satisfaction of the said Common Council and the Commissioner of Public Works, by the said parties of the second part at their own cost and expense."

Clause XIV provided that no payment should be made " until a certificate of the engineer of such work, as to the value of the work done, or that this contract has been fully performed, and the work finished, complete and perfect in every respect, has been filed in the office of the City Clerk."

Clause XVII. " That no work shall be considered as accepted which may be defective in construction or deficient in any of the requirements of the specifications, and that the said parties of the second part will correct any imperfect work, whenever discovered before the final completion and acceptance of the whole work."

Clause XXXI reads in part as follows : " That the contractor shall be responsible for the entire work until the time of its final acceptance, and shall keep the whole work executed by him in perfect order and repair for the peried of 12 months after the comple-

tion of the same, at which time it may be accepted, if the work be then in good order, in conformity with the required grades, lines and dimensions, and if all other stipulations on the part of the contractor have been fulfilled."

The plaintiffs proceeded with the execution of the work, which consisted chiefly in furnishing filling to bring the streets to the required grade, and accomplished that result. Unfortunately, the streets ran through swampy, unstable ground, called by one of the witnessess a "bog meadow," and the embankment overloaded the foundation, causing the street to settle, so that bubbles appeared and the land on either side of the street was forced upwards. There is evidence tending to show that the plaintiffs on several occasions by adding more earth brought the street up to the grade, and that at some time Mr. Odell, the commissioner of public works of the defendant, ordered the plaintiffs to stop their work; that after this cessation of the work the streets again settled below grade and that the street at the time of the trial was lower than it was before the work was commenced. The plaintiffs, claiming that they had fulfilled their contract, brought this action against the city to recover $9,773.70. The defendant answered, and the issues were referred to a referee, who directed judgment for the plaintiffs for the full amount claimed. From the judgment entered upon such report the defendant appeals.

It will be observed that the contract did not require the payment of a gross sum for the entire work, but the payment of thirty cents per cubic yard of material furnished. The referee found, as matter of fact, that the plaintiffs furnished material to the amount and of the value stated in the complaint, and that the defendant had wrongfully and unjustly refused to accept the work and to take the proper and necessary proceedings under the provisions of its charter to raise the moneys with which to pay the plaintiffs for the work performed.

In his opinion the referee says: "The contracts, however, did not specify the amount of filling to be required, either approximately or otherwise. * * * The evidence shows that on more than one occasion the plaintiffs brought the street up to grade and that they duly demanded of the proper authorities the requisite certificate to entitle them to payment. The first question is, did they comply with their contracts? I think that they did. At the time they

were ordered to stop work they brought the street up to grade and were entitled to the proper certificate."

By the terms of the contract the plaintiffs agreed not only to bring the street to the specified grade, but to maintain it at such grade for the period of twelve months after the completion of the work. That they fully appreciated the force of these provisions is evidenced by the fact that after they first brought the street to grade and after it sunk into the swamp, they filled it up on three or more different occasions. The defendant made no representations whatever as to the character of the foundation of the locality, and the plaintiffs were bound to continue their work until it was accepted by the commissioner as a fulfillment of the contract, or until he improperly refused to give a certificate. The sinking of the street furnished no defense to their agreement to fill the street to grade and to keep it in perfect order and repair for twelve months after its completion. The city bound itself to pay thirty cents per cubic yard for all work necessary to the fulfillment of the contract, and the plaintiffs were bound to continue to furnish filling so long as it became necessary for the purpose of filling up to and maintaining the grade for a period of twelve months after the completion of their work. Their failure to do so prevents a recovery in this action.

But the plaintiffs contend that they were excused from further performance of the contract because Mr. Odell, the commissioner, directed them to stop further work. The testimony upon this subject is somewhat meagre. The plaintiff Light testified : " I was told to stop by the former commissioner, Mr. Odell," but it does not appear when this order was given. Mr. Odell was not examined as a witness, but his term of office expired and he was succeeded by Mr. McTague. The date of the latter's appointment does not exactly appear, but, being examined as a witness, in February, 1898, he testified that he had been in office about five months, which would make his term commence sometime in September, 1897. The contract was dated December 9, 1896. This action was commenced October 20, 1897, and the complaint alleges that the work was completed before that date. There is evidence tending to show that the work commenced December 1, 1896, and continued almost daily up to March 20, 1897, at which time there was a sus-

pension of the work until April fifth, from which time it continued daily up to April 14, 1897. This testimony is derived from "slips" furnished by the drivers of the wagons occupied in the filling, but it is difficult to determine from the record whether work was done at other times, and the counsel of the parties have furnished us no tabulation showing whether these slips cover the entire work for which payment is sought in this action.

It may be observed, however, that as Mr. McTague succeeded Mr. Odell about September, 1897, and as the slips furnished relate to work which was done only up to April, 1897, all of the work thus mentioned in the slips must have been done during Odell's incumbency. Mr. McTague testified : " No work has been done by Johnson & Light on these contracts since I have been commissioner, that I know of," but the plaintiff Light testified : " Mr. Odell was the commissioner of public works of the defendant at that time* during all the time this work was in progress. I did work after the appointment of the present commissioner."

It is probable that the first part of this testimony of Light referred to the general work in filling the street to grade, and that the latter part related to work done in renewing the grade, so that the two statements may be easily reconciled, and we assume that the body of the work, upon the completion of which the plaintiffs claim the fulfillment of their contract, was done during Odell's term. But even if the plaintiffs were justified in suspending the work by the direction of Odell, the fact that they continued to work thereafter, and during the administration of McTague, constitutes a waiver of any rights which they might have acquired by obedience to the direction of Commissioner Odell.

The referee erred in finding that the plaintiffs had fulfilled their contract, and for this error the judgment must be reversed. This ruling makes it unnecessary to examine any of the other points presented by the appellant.

The judgment must be reversed and a new trial granted.

All concurred ; HATCH, J., absent.

Judgment reversed and new trial granted before a new referee to be appointed at Special Term, costs to abide the event.

---

*Sic.*